Mr. Kirsch. Good morning. May it please the Court, Stephen Kirsch on behalf of Antonio Hill. The first issue to be addressed is the denial of the motion to suppress the evidence. And historically what happened in this case actually, well, the search that we challenged occurred on June 24, 2011. But it's the day before, June 23, 2011, when the events which precipitated the search began. On June 23, 2011, the police saw Dominic Hill, not Antonio Hill. They saw his brother outside the apartment building engaging in a hand-to-hand narcotics transaction. And the police said, well, they were just investigating. They didn't know anything about him. They didn't know anything about the apartment building or anything else. They just saw this happen. They watched him, and then they saw him go inside the building and again appear to engage in some type of illegal transaction. Again, they didn't go into the apartment on June 23. The next time they saw Dominic Hill was when Mr. Hill was standing on the third-floor balcony outside of the unit, and at that point he was not engaging in any illegal activity. They just saw him, and they associated him with the particular unit. The next day the police came back, this was on June 24, and again they saw Dominic Hill, not Antonio Hill. They saw him on the street. The police went up to him. They smelled marijuana. One of the police officers engaged Mr. Hill in a conversation. Another police officer went in the building, and they smelled marijuana in the hallway of the building, not in the particular unit. They were able to obtain a key to the particular unit from Mr. Dominic Hill, and apparently he told them which unit he was associated with. The police then went upstairs, and they knocked on the door. They tried the key first, though, didn't they? They tried the key first. They wanted to make sure that they had the unit, and the testimony at the motions hearing was questioned. So the chronology is you knock on the door, and then you say this is the Prince George's County Police. Correct. Answer, yes, sir. And then after you say this is the police, you get a response from the person inside. Answer, yes, sir. So that's the same chronology we would submit as what occurred in Moab versus the United States, which we believe is controlling in this case, where you have the police responding to a unit in an apartment building. They knock on the door. Somebody says, who is it? They say it's the police. The door then opens up, and the officer— I know in Moab, the officers instructed the people to order them to open the door. They did. Which is a huge distinction. Well, it's a distinction, except that in this case, the record is that the police officer stuck his foot in the doorjamb. And I would submit that's a key factor, because— But that's after he had already seen the marijuana and the child in there, wasn't it? I'm not sure the record's clear on that. But I think either way that that's what makes this an unconstitutional search, because the police knock on the door. They say they're the police. Somebody opens the door, and then the police do something to keep the door open. And I would submit to the court that the police had no probable cause at that point to even look inside the apartment. What they should have done, given that they were there the day before— I don't think you mean to say they didn't have probable cause to look inside the apartment. They don't need probable cause to look inside the apartment if someone voluntarily opens the door, correct? That's correct. I'm sorry. I misspoke. Okay, yeah. But they had plenty of time to go to a magistrate, present these facts to a magistrate, and obtain a warrant to go into the apartment. Could you clarify for me, though, when you think that should have happened? Between what point—between after the occupant voluntarily opened the door, they should have stopped there? Because wasn't there a plain view issue at that point? Well, my position is that they shouldn't have knocked on the door under the authority of the law because at that point in time, they didn't have any reason to suspect that there was any illegal activity going on inside that unit. The smell of marijuana was not coming from that unit. They didn't observe any illegal activity going on in that unit. They didn't have a focus, a person that they were seeking. There were no exigent circumstances, certainly, that would have prevented them from getting a warrant from a magistrate. Well, the record at 190—well, 203, the district court makes the finding, the door was then opened wide enough for the officers to observe marijuana right in front of their face. You said you weren't sure in response to Chief Judge Traxor whether that was the case, but that is a finding by the district court. No, I understand that. Again, they saw—that was a testimony that they saw the marijuana. More than a testimony, that's the district court's finding. That's the district court's findings, and I can't dispute that. But my point of contention is that— They shouldn't have knocked. They shouldn't. What burden, what standard did they have to meet to knock on a door? Well, the standard they should make is that when they have suspicion that something is going on, that there is some illegal contraband or illegal activity in a particular unit in an apartment, they should first get—go to a magistrate and get a warrant. Have a neutral and detached magistrate review the evidence that they can present. Have a neutral and detached magistrate say, well, these factors may not add up to a reason to go to that apartment because the smell is not coming from the apartment. We haven't seen any illegal activity. We don't know if there's any activity associated with that apartment. Do you think they can secure the apartment while they go and get the warrant? No. They can't? Not really. Well, I think that—and again, it's Antonio Hill's expectation of privacy, obviously, that was violated, and that given the limited information that they had, that that limited information should have been brought to a magistrate who could then have objectively evaluated it and gotten a warrant. There would have been no delay. There would have been no harm. There wouldn't have been any opportunity for anything to be disposed of because the people in the apartment didn't know that the police were coming in. Yeah, but they know—what you're saying is they can knock on the—they can't even knock on the door. Is that what you're saying? He didn't just knock on the door. But that's in answer to my question. I'm sorry. I understood you to say that they didn't have any legitimate grounds to knock on the door. Well, I guess police can knock on doors. I mean, I can't—it's a question of what happens after they knock on the door. All right, so they knock on the door. They smell marijuana. They see marijuana, and you would say they just have to walk away and go back and get a warrant after the people there know the police, know what they've seen, know what they smell, and they can't secure it. I think in order to afford full protections under the Fourth Amendment before they go into someone's home who has a reasonable expectation of privacy, and that's what Judge Williams found preliminarily, that Antonio Hill had a reasonable expectation of privacy. So in order to protect his Fourth Amendment rights, that under these circumstances, given what they knew, they should have presented it to a neutral and detached magistrate. And I submit that MOAD is controlling. Okay. Thank you. Does the Court have any other questions? Do you want to go into the question about the waiver? Do you want to address the question of whether or not this issue is appropriately before us by the fact of the guilty plea? I would. And, again, I believe it's governed by Rule 11. And we had the consent of the Court, and we had the consent of the government in the taking of the plea that Mr. Hill would retain his right to appeal the trial judge's denial of the motion to suppress. Where did you have the consent of those? I thought that Rule 11 requires a written reservation and the consent of the District Court and the consent of the government. And where are those things here? We don't have the written reservation, I agree. But we do clearly have the consent of the Court, because Judge Williams was very specific in his inquiry of Mr. Hill and, in fact, stated, you know you are preserving your right to appeal. He didn't say appeal what, though, did he? Well, the only thing to appeal would have been the motion to suppress. Actually, that's not true at all, is it? You can appeal, for example, a deviation from the plea colloquy.  Whether the offense actually occurred in the state and district of Maryland? There are lots of things you can appeal when you plead guilty, but not a motion to suppress denial. Well, I agree, theoretically. Of course you can appeal any of those issues if they're preserved. That jumps ahead to the conclusion and elides the analysis. The question is whether or not, and I was a little surprised by your response, because they didn't have a written reservation. It didn't seem to me that they had the consent of the district court, and it also wasn't clear to me that they had the consent of the government. So I was hoping that you would elaborate a little more on the existence of at least the second two. Well, what the court said was? It said you will have the right to appeal. That's correct. Which doesn't necessarily constitute the consent to a conditional plea. Well, and I would respectfully submit that the only issue that was preserved for appeal, there was no challenge to the court's jurisdiction. So that issue was never raised because there was no basis to challenge. Well, the problem that we're facing, though, is that there doesn't seem to be any issue that was preserved. Well, the motion to suppress the evidence was preserved because that's what was litigated. And what happened is, chronologically, as soon as that motion was denied, we went right into the plea, and Mr. Hill pled guilty to the indictment. So there wasn't an exchange of ideas. It wasn't an exchange of, you get this for pleading to that, we'll give you something else. It was like, I'm pleading to the indictment because the only issue I have to raise is this motion to suppress statement. It's the only conceivable issue. And I don't believe the government thought of things otherwise. And the government's never raised that at all. And the government was there. The government could have noted an objection at the time. So the government, I submit to the court, waived. The government doesn't challenge the appeal. That's different from asserting that the government acknowledges that this is a conditional, that it was conditional, that the plea was conditional. Right. I agree. And we submit the condition was that he could appeal the motion to suppress the statement against a constitutional challenge to the denial of that motion. So, again, given the fact that the government had all this opportunity to note an objection, they didn't note an objection to this court either. They didn't challenge the subject matter jurisdiction of this court. And so my position is that the government has waived their challenge. Of course, no party can waive subject matter jurisdiction, right? Absolutely. So you're saying you agree with your brother here that this court has jurisdiction, subject matter jurisdiction? This court, yes, certainly. Even though you didn't perfect an unconditional guilty plea? Well, again, because we don't have the written agreement. I understand. No, because you didn't meet any of the prerequisites for a conditional plea. Well, I believe that, well, I respectfully believe that we did by getting, A, the court having this colloquy with the defendant and saying, and you understand you have the right to repeal, that that's the court's consent to the condition. And the government's not making an objection, waiving an objection is. And the no written reservation. But I take your point. I'm sorry? I take your point, but I think that doesn't entirely respond to Judge Davis's question. Well, I mean, that's what we have. That's what occurred here. And, again, we didn't have the written agreement. I agree. But we had the other requirements, and there was a waiver. And the famous phrase, it is what it is. Well, that's exactly right. It is what it is. And it's not a jurisdictional issue in your view because? Because, A, because the government waived it. And I understand you can't waive subject matter jurisdiction, but other courts, other circuits that have decided this issue have not concluded that it deprives this court of subject matter. So it's your argument that it's not jurisdictional? Exactly. Okay, thank you. All right, thank you very much. Let's hear from Mr. Pierce. Mr. Chief Judge, and may it please the Court, James Pierce for the United States. This court has jurisdiction over Hill's suppression claim, and because the government did not raise the preclusive effect of his unconditional guilty plea, this court should reach the merits. So waiver of the waiver. Waiver of the waiver. In our brief, we suggested forfeiture of the waiver, which is in line with a Tenth Circuit case. Sometimes the difference between forfeiture and favor matters, I think, in this context. The key takeaway is the government didn't raise it, and that allows the court to treat it on the merits, which is not a jurisdictional question in any event. I'd like to briefly just touch upon the conditional guilty plea. Our contention is Rule 11A2 requires parties to identify in writing a specified pretrial issue, and, of course, the consent of the court and the consent of the government. The plea colloquy here was not a clean one, and you can perhaps obliquely suggest that the court had some consented or at least acknowledged mistakenly a right to appeal, but there certainly wasn't writing and there certainly wasn't consent by the government. Does it matter for purposes of your analysis, though, since you don't believe it to be a jurisdictional issue? No, Judge Duncan. You were just setting the record straight as the predicate? That's right. In fact, we're essentially asking this court to treat this as a functional conditional guilty plea. In other words, because we didn't raise the preclusive effect of it, that allows the court to reach the merits, not on jurisdictional grounds, but we're not invoking the Rule 11 preclusion that we otherwise would have had we raised that in a timely fashion. The point being, even if we had raised the preclusion and said, listen, this was not a conditional guilty plea, this court still would have jurisdiction. This court would then have jurisdiction to decide whether or not we had properly raised it. In this case, we didn't raise it, and nonetheless the court has jurisdiction to reach the merits of the analysis. My question is simply analytically, and I'm really just asking because it isn't clear to me, that we have to reach the status of the guilty plea conditional or not conditional in order to allow you to waive the waiver or forfeit the waiver as you wish. Is the discussion of the status of the guilty plea a necessary prerequisite to the further analysis of whether this is jurisdictional? No, because regardless, it is not a jurisdictional requirement. Rule 11 doesn't establish a jurisdictional requirement. It's not backed by statute or by constitution. There are some federal rules that are, but Rule 11 no court has held is, and as Mr. Kirsch indicated, that's in line with the results and the analysis of circuit precedent. Turning then to the question of the merits, we first argue that Antonio Hill frankly doesn't have standing and expectation of privacy in the Riverdale Road apartment sufficient to challenge any of the police officer's conduct. As Mr. Hill argued both below and in his brief, Antonio Hill was nowhere to be found on June 23rd and June 24th. The only evidence before the district court that he had any sort of expectation of privacy was frankly a Comcast bill. There was testimony from his aunt that he was renting the apartment and a suggestion of a lease agreement, but that was never actually found. Why isn't that enough? The district court inferred that he slept there from time to time. Well. He's paying for HBO. The district court said it's a close call and. And ruled against you on it. It did rule against us, but our point is that's our contention. That's a legal conclusion that's not entitled to deference. Certainly we're not taking issue. Slept there from time to time is a legal conclusion. In essence, that's a conclusion that was not based on a fact that was before the court. It's a factual inference. It's a factual inference based on nothing in the record. And it's true that this court does grant some degree of deference. The Comcast bill is in the record? The Comcast bill. The testimony is in the record? That's certainly all true. Our point is the mere fact of the Comcast bill suggests that he paid for television there. Your stronger argument is on the merits. This is true. I won't belabor the point. I think as each member of the panel indicated, what the officers did here was at its core reasonable, which is the Fourth Amendment question. They went up to the door. They had seen the previous day some drug transactions. There was this peculiar interchange with Dominique Hill where they had the key. At least that shows that they've identified the apartment. The record indicates they had smelled some marijuana. They knock on the door. There's nothing wrong with knocking on the door. Mr. Hill conceded that below. And this court's decision in CFOS makes that clear. We strongly disagree that this is akin to the situation in Moab where the officers are pounding on the door, as Judge Traxler indicated, are saying, ordering the occupants to open up. This is a simple knock on the door. This is the police. At that point, the door opens widely, as Judge Davis notes. The district court found that immediately in view was marijuana, a small child, and the smell of marijuana. What also happened, and this comes through the testimony of Officer Spencer, was that Iriko, and I'm told that's how he pronounced his name, Iriko, kind of became belligerent and offensive, and the officers then were concerned about their safety, were concerned that perhaps he would shut the door, and they did stick their toe in the door jamb and come in. So they had probable cause when they saw the marijuana and smelled it. They then, under either the exigent circumstances document or to a certain extent, as Judge Duncan indicated, the plain view doctrine, they were entitled to go into that apartment, and this falls almost directly in line with this court's decision in CFOS, almost an identical fact pattern. They briefly secure Iriko. They do a very short protective search, and then they go and get a warrant, which Mr. Hill doesn't challenge. All of those are entirely reasonable actions and fall in line with decisions of this court, and for that reason this court should affirm on the merits of the suppression question. I did have a question going back to our discussion about the conditional plea, unconditional plea. One of the, if we, if this is not a jurisdictional question, if we can go ahead and hear this appeal, does it matter for purposes of a conditional plea whether or not the district court consents? Don't you just sort of wipe out that requirement to a conditional plea? Since none of the, since we don't have any of those factors here, what becomes of those factors analytically? Am I, do you follow my question? I think so, and I think the Seventh Circuit in Combs expressed a similar concern that the government would essentially be overriding or the parties would be overriding the district courts. The district courts, right. I think there are a couple of responses to that. First of all, on this particular record, although we would not argue that there is consent as needed for 11A2, it does appear that the district court was operating from the understanding that Mr. Hill was preserving an appeal, right. So to the extent there was concern that this district court under this factual situation was concerned, was being overridden, it seems as though, in fact, if anything, his wishes were being fulfilled or are being fulfilled to the extent this court decides the case on the merits. But even more largely, sort of as a larger question, it's not clear that that requirement is so robust, as the Seventh Circuit suggests, as not, no other court has found that that is a particular reason why the court shouldn't reach the question. It's certainly not a jurisdictional question. And courts do possess an inherent authority to take certain actions, and as this court did in Bundy, sort of recognizing judicial economy as a reason why the parties aren't concerned necessarily with the interests of the judicial branch. And if this had been a straightforward plea colloquy, and we make this argument sort of at the tail end of our supplemental brief, perhaps the better thing to do is the court would say we're exercising our inherent authority, there's really no reason to reach this, the parties dropped the ball on this, and it's a waste of all of our time to reach it. But that, again, under this particular factual situation, we would argue the court's exercise of its inherent authority to do that is disfavored as a general matter and wouldn't be appropriate here. Okay. I think we understand your position. Thank you. Thank you. Mr. Kirsch? Okay. Thank you. We'll come down and re-counsel and go into the next case. Mr. Kirsch, I know you're court-appointed. We appreciate very much your undertaking representation of Mr. Hill. I appreciate it.
judges: William B. Traxler, Jr., Allyson K. Duncan, Andre M. Davis